SMITH B. BRACEY AND NELLIE A. BRACEY,, Co-
PARTNERS, TRADING AS S. H. BRACEY COM-
PANY, ET AL.,

*vs.*

DAVID McGARY.

*Stocks: contract to repurchase at double par value; considera-
tion; evidence; nature of corporation; time and place of
contract; proof of offer to public. Prayers:
court's instructions.*

In an action on a contract to repurchase corporate stock at
double its par value it is proper to admit evidence as to the
nature of the corporation, as reflecting upon the reasons which
might induce those selling the stock to agree to such terms.

pp. 281, 282

Where the defendant denies the delivery of the contract sued
on, it is proper to permit the plaintiff to tell the circumstances
under which he claims to have received the contract.     p. 282

Where, in an action on a contract for the repurchase of cor-
porate stock at double the par value thereof, the defendant denied
the delivery of the contract and characterized it as "foolish,"
it is proper to admit evidence of a statement issued by the
defendant to the public offering to repurchase preferred stock
at a premium and common stock at par.     p. 285

Where it appears that the plaintiff bought from the defend-
ant preferred stock and common stock, and that one of the terms

of the purchase was that the defendant should repurchase the common stock at double the par value thereof, the defendant's agreement to repurchase at such price was not without consideration.　　　　　　　　　　　　　　　　　pp. 287, 288.

*Decided March 7th, 1919.*

Appeal from the Baltimore City Court. (DUFFY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS and URNER, JJ.

*Henry N. Abercrombie* and *Arthur L. Jackson,* for the appellants.

*Israel B. Brodie* (with *Harry B. Wolf* and *Brodie & Sacks* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a judgment obtained by the appellee against the appellants for $13,000.00 on a contract concerning the repurchase of some stock of the Howie Mining Company dated the 16th of September, 1914. It is a different contract from the one involved in an appeal disposed of at the present term of this Court, although between the same parties and in reference to stock of the same company. It provides that:

> "In consideration of the sale this day made to David McGary of three thousand shares of the preferred stock of the Howie Mining Company, and the delivery to him of six thousand shares of the common stock of said Company, the party of the first part (the S. H. Bracey Company) agrees to repurchase from the

party of the second part (McGary), in twelve months
from this date, all of the common stock so delivered
to the party of the second part at twice its par value
($12,000.). It being understood by this contract that
the party of the first part is obligated to buy this stock
and the second party to sell it at the above specified
price, payable at German Bank, Wheeling, W. Va."

There are thirty exceptions (one being numbered 13-a)
in the record in reference to the admissibility of evidence,
and one presenting the rulings on the prayers. The plaintiff
offered one prayer which was granted, and the defendants
offered ten, all of which were refused excepting the fourth
and sixth, which were granted.

One of the main contentions in this case was that the con-
tract was never delivered, although it was not denied that it
was executed. It is stated in the brief of the appellants that
"there were a number of exceptions taken to the rulings of
the Court on the evidence, some of which are material and
others not, some of them largely depending upon the action of
the Court taken on prior questions," and, although the appel-
lants do not in terms abandon the others, we understand
that only those considered in their brief are pressed, and we
will not discuss at length the others. David McGary, the
appellee, was the first witness. He testified that in Septem-
ber, 1914, he met the defendants in their office in Wheeling,
W. Va., and had some transactions with them in stock of the
Howie Mining Company. He was asked: "Who is the Howie
Mining Company, what is the Howie Mining Company,
what does it own?" That was objected to and the objection
being overruled, an exception was noted. He replied that
it owned a tract of land in North Carolina, and he described
the location. Then, after the formal parts of the first bill of
exceptions are stated in the record, his answer continues in
more detail. We can see no objection to that question. Par-
ticularly as it is unusual to have such a contract as the above,
it was proper to inform the jury about the kind of company

it is, as reflecting upon the reasons which might induce those selling its stock to agree to such terms. In the second bill of exceptions objection was made to the introduction of the contract, the execution of which was proven by the appellee, and in the third, objection was made to the admission of the certificates of stock claimed to have been purchased by the appellee from the appellants. Those exceptions are not pressed, and could not well be, but the one in the fourth bill is. The witness had identified the contract, as the one between the S. H. Bracey Company and himself, and he had testified that he saw Bracey sign it and saw Wyatt and La Due sign as witnesses. The certificates of stock in evidence were number 557 for six thousand shares of common stock and number 437 for three thousand shares of preferred stock, each having a par value of one dollar per share, and both being dated September 16, 1914, and issued by the Howie Mining Company to Smith H. Bracey and assigned to the appellee. McGary said that that was the only contract he received that day—it having been delivered to him by Bracey in the presence of Wyatt, Dorsey and La Due, and there was a copy of it kept by Bracey. He was then asked: "Will you be good enough to tell his Honor and the jury whether or not the transaction, which you have just described, involving the transfer of this stock to you, and the delivery of that contract to you, was a hurried transaction, or was it a quiet and deliberate one? Tell exactly how it took place, and tell us where it took place, the rooms and so forth?"

We can have no doubt about the relevancy and materiality of that question. As the defendants were denying the delivery of the contract, it became important to let the jury know the circumstances under which the plaintiff claimed he got it. In his answer he described the office as having from three to five rooms—a large one and some smaller ones, that they were in the middle room when they were making the contract, talking it over, agreeing on the terms *"writ* in the essence of the contract." He said they talked about the re-

purchase of the common stock and Bracey agreed to buy it as
described in the contract at two dollars a share a year from
that date; that the contract was prepared by Wyatt and
Bracey told him to write up the contract they had talked over,
and Bracey signed it and then La Due and Wyatt signed it
as witnesses; that he signed it, and Bracey delivered it and
the stock to him. He said he gave for the preferred and the
common stock $306.00 in cash, ten shares of the First Na-
tional Bank of Bellsville, Ohio, which he turned over at
$125.00 per share. He also gave part of a loan company he
had in Savannah, valued at $2,200.00. The fifth, sixth,
seventh and eighth exceptions were in reference to demands
on the defendants for the repurchase of the stock, but they
do not seem to be pressed.

The witness had said that he asked for additional sums
besides the $12,000.00, that he asked for $15,000.00 alto-
gether, and interest on it, that he had $23,200.00 worth of
stock, and that he made demand for the redemption of all of
it. He was then asked: "How much did you ask to redeem
it?" Counsel for the appellants then asked the Court to
strike that out as leading and contradictory to what the wit-
ness just said. That motion was overruled, and that action
constitutes the ninth bill of exception. The witness answered
the question by saying, "I asked him to redeem the $23,200."
As we understand the record it is practically the same in
reference to the demand as we considered at length in the
opinion in the other case, excepting there was a specific de-
mand by letters for the amount sued for in this case. Appel-
lee claims to have first asked for $15,000—being this $12,000
and $3,000, the par value of the preferred stock in the other
case—and then as he had $23,200 worth of stock he de-
manded all of it. In the tenth exception he was asked: "The
$23,200 you spoke of, did that or not include the $12,000?"
That was objected to and the objection was overruled. The
witness answered: "No, sir; that did not include—well, if
he would pay me the $23,200, why, that would not include

the $12,000." There seems to be some confusion in that answer, but there was no error in permitting the question to be answered. The appellee was testifying to what occurred when the oral demand was made, and as the exception in the tenth bill was made to the question, any confusion about the answer was not excepted to, and at any rate it could not have injured the defendants. Apparently the witness meant that if the $23,200 was paid he would make no claim for the $12,000, as he said that sum covered all the stock he had. There was therefore no error in the ninth or tenth exception. Those from the eleventh to the fifteenth, inclusive, are not pressed.

In the sixteenth objection was made and overruled to admitting a paper describing Bracey, what the Bracey Company owned and a number of other things. It is the same one referred to in the other opinion as "a white paper." That was given to McGary by Bracey on the 16th of September, 1914, at Bracey's office. In it is contained this statement:

"He is not selling mining stock, but borrowing money for a year on some of his preferred stock which he guarantees to redeem in one year at $1.10 7% or $17.00 on the $100.00. This preferred stock is first lien on the Howie Mining Company property, which is clear of indebtedness and is underwritten by S. H. Bracey Company. In addition, he gives two shares (2) of his common stock, which the purchaser retains. Mr. Bracey guarantees that this common stock, which the purchaser receives free, will pay ten per cent. dividend or more within six months, and he also agrees to purchase said stock back at par at the end of twelve months, if not satisfactory to the purchaser."

That statement was important in this case in which the common stock was involved, and not merely the preferred, as in the other case, as it stated that the Bracey Company guaranteed to purchasers of the stock to redeem the preferred stock in one year at a premium and to purchase the common

stock back at par at the end of a year. This special contract provided for payment of double the common stock, but not for the redemption of the preferred stock and as Bracey denied the delivery of the contract, and spoke of it as foolish, etc., it was proper to let the jury know the offer which had been made to the public generally.

The seventeenth, eighteenth, nineteenth, twentieth, twenty-first and twenty-second exceptions do not seem to be pressed. On cross-examination of Mr. Wyatt he was asked: "Mr. Wyatt, altogether you took from Mr. McGary, or rather the Bracey Company received from Mr. McGary, how much money for the various sales of stock—the entire transaction, beginning on September 16, 1914, and ending on October 5, 1914?" That was objected to and the objection being overruled, the twenty-third exception was taken. He replied: "The total amount of stock purchased by Mr. McGary totaled 23,200 shares; but the Bracey Company did not get that much money out of it; there was a deficit. That was the face value of the money and securities received. I mean $23,200." There was no error in that ruling. That was the amount for which the demand was made and the evidence explained why that amount was demanded.

The 24th, 25th and 26th exceptions were not pressed. When S. H. Bracey was on the stand he testified on cross-examination that Mrs. N. A. Bracey was his wife and his partner, and that she signed some blank contracts; that it was his wife's signature to the paper dated October 5, 1914, between the Bracey Company and McGary for 5,000 shares of preferred stock; that "This is not the contract of the Bracey Company. My wife signed it and she is my partner, and it is a contract for 5,000 shares of preferred; but my wife did not fill it in. It is filled in by somebody that I never saw their handwriting." He was then asked: "Did you or not on the 5th day of October, 1914, sell to David McGary 5,000 shares of preferred stock of the Howie Mining Company, and did you or not at that time give him also,

as an inducement to the purchase of this preferred stock, 10,000 shares of the common stock of the Howie Mining Company?" That was objected to, and the objection being overruled the 27th exception was taken. The witness replied: "Yes, sir. I sold him that amount of stock, but I traded. He gave me a lot of other stock for it and I gave him no guarantee." That was admissible. The position taken by the defendants required, or at least authorized the plaintiff to explain the different transactions he had with the Bracey Company, as reflecting upon the cause of action in this case. Bracey said that the 5,000 shares of preferred stock represented by certificate No. 416 "is part of the $23,-200 worth of preferred stock which I sold David McGary between September 16th, 1914, and October 5th, 1914, and this certificate No. 611 for 10,000 shares of common stock is the bonus or inducement given him with that transaction." The contract of October 5, 1914, was then offered and admitted. The defendants objected to that, and the action of the Court was embraced in the 28th exception. The witness had testified that he had given no guarantee, but that contract showed that the Bracey Company "agrees to and does hereby guarantee to repurchase, at the election of the second party. * * * the amount of preferred and common stock so sold to the party of the second part and pay therefor the amount of the par value of said preferred stock, together with interest thereon," etc. That was clearly admissible, not only to contradict the witness, but as in part showing of what the $23,200 demanded consisted. In the 29th exception Bracey was asked whether the contract, which was the one sued on in the other case, was "one of the form contracts that you had in the office?" That was admitted over the objection of appellants. The witness replied: "That is not the contract you are claiming on. This (indicating) is the form contract, the kind we had in the office. The kind we gave out to all people who bought preferred stock when they asked for a guarantee." As the contract of October 5,

1914, was precisely like the one in the other suit, and Bracey seemed to deny the validity of the one of October 5, we suppose the object was to show that they were making contracts of that kind, but, whatever the object was, the question and answer were not of such significance as would justify reversal of the judgment, even if conceded to be irrelevant. We have thus considered all of the exceptions in reference to the admissibility of evidence, and we find no reversible error in any of them.

The plaintiff's prayer seems to correctly present the case, as contended for by him. There is no provision in that contract that there should be a written demand and notice in order to require the repurchase, as there was in the contract in the other case. The main defense taken by the defendants was that they had not delivered such a contract to the plaintiff. That question was submitted by the prayer which in the record is spoken of as on "the 16th day of *December,* 1914," but no point was made of that, and we understand it to have meant *September,* as the rest of the prayer shows. We do not understand just what is meant by the appellants' contending that the question of consideration should have been submitted by the prayer. By their eighth prayer they ask for an instruction that if the jury found that the 6,000 shares of common stock were delivered without any consideration passing from the plaintiff to the defendants, and that there was no consideration whatever passing from the plaintiff to the defendants for the execution of the paper writing sued on in this case, then the verdict must be for the defendants. McGary testified that he paid in cash, stock, etc., about $3,750.00 for the 3,000 shares of preferred stock *and* the 6,000 shares of common stock. If that is correct, he paid more than the par value of the preferred stock, and it is not contended that it was worth more than par. But at any rate, whether it be called a bonus, or something else, the evidence shows that for the consideration paid the plaintiff got the preferred and the common stock and the contract

itself says that in consideration of the sale made to McGary, the Bracey Company agrees, etc. The defendants, as we have seen, claim that they did not deliver the contract at all. McGary's testimony is to the effect that he would not have made the purchase had it not been for the promise to repurchase the common stock. If the contract was made and delivered, as McGary claims, which the jury was called upon to determine, the object of the defendants in making such a contract clearly was to induce McGary to continue his investments in the stock of the Howie Company. It seems to have accomplished its purpose as he altogether put $23,200 in it in money and securities, according to the testimony of Wyatt. The case of *Struthers* v. *Drexel,* 122 U. S. 488, is very much in point. The Court was right in granting the plaintiff's prayer and also in rejecting the defendant's eighth prayer.

The defendants' first and second prayers asked the Court to say that there was no evidence legally sufficient to entitle the plaintiff to recover—the first referred to the pleadings and the second did not. They were properly rejected, as there was ample evidence to go to the jury. The third and fifth were on the theory that the plaintiff could not recover because he demanded more than the defendants owed. We dealt at some length in the other opinion with the demand for $23,000 and pointed out that in point of fact the plaintiff had included in the demand the amount claimed to be due in that case. That is also true in this case. Wyatt testified that McGary demanded $3,000 under a guarantee of the preferred stock (which was in the other suit), and $12,-000 for the common stock. There is ample evidence to show that while a demand was made for $23,200, it covered, or was supposed to cover, what the defendants owed the plaintiff on the several contracts. It would scarcely be contended that if a party made a demand for $20,000 on two contracts for $10,000 each, that he could not recover on one because he was not entitled to the other, if he had referred to both

in his demand. But beyond all that, in the letters in the record it is shown that the plaintiff made specific demands for the $12,000, in addition to the others spoken of. The third and fifth prayers were properly rejected. The defendants' seventh prayer was as to the burden of proof to show the delivery of the contract, but the sixth sufficiently instructed the jury on that subject. We do not deem it necessary to say more than we did in the other opinion in reference to the letter of December 24th, 1914, written by McGary to the defendants. It is sufficient to say that there is nothing in this case to sufficiently differentiate it from that one to justify the granting of the ninth prayer.

We have thus considered the various exceptions and while we might refer to other parts of the record to further sustain positions we have taken, we do not deem it necessary and will not do so. There can be no possible question about the merits of the case, as shown by the evidence, and we find nothing which would justify us in reversing the judgment.

*Judgment affirmed, the appellants to pay the costs.*